THE CITY OF BOSTON *vs.* THE INHABITANTS OF WEYMOUTH

In order to prove a settlement under the twelfth mode provided by the law (*St.* 1793 *c.* 34, § 2; Rev. Sts. *c.* 45, § 1, *cl.* 12,) by a residence and the payment of taxes in the town where the settlement was alleged to be, an original document preserved amongst the records of the town, and purporting to be an assessment of taxes for the year 1798, was produced in evidence, from which it appeared, that taxes to the amount of $3·03 were assessed in that year, upon the individual in question, for his poll and estate; and it also appeared in evidence, that the entry of these taxes on the bill of assessment had been erased by a line drawn through it; and that the collector for the year 1798 had been allowed a credit with the treasurer of the town for a discount of the said taxes; it was held, that whether the production of the bill of assessment raised any presumption of the payment of the taxes so assessed or not, the circumstances stated above were competent evidence to prove that the taxes in question were not in fact paid.

An ancient book, kept among the records of a town, purporting to be the " select-men's book of accounts with the treasury of the town," is admissible in evidence of the facts therein stated; and, where the selectmen were at the same time as-sessors, an entry, in such book, of a credit, by an order in favor of the collector for a discount of a particular individual's taxes, was held to be evidence of an abatement of the tax of such individual.

THIS action was brought to recover compensation for the support of Henry Pittee, in the house of industry in the city of Boston, from July 17th to September 5th, 1846, and for supplies furnished to Sarah Pittee, during that and the fol-lowing year, by the plaintiffs. The case was submitted to the court of common pleas upon an agreed statement of facts, and came to this court by appeal. The court were to decide upon the admissibility and competency of the evi-dence, and to draw such inferences from the facts as a jury might draw.

The paupers, Henry and Sarah Pittee, never having gained a settlement in their own right, had the settlement of their ancestor, Nathaniel Pittee; which, it was admitted, was in the town of Weymouth, unless he had subsequently acquired a settlement in the town of Hingham, to which he removed from Weymouth, about the year 1789, being then a citizen of this state, and of the age of twenty-one years; and where he afterwards resided continuously and uninterruptedly, for more than twenty-five years, until he removed to Boston, where he remained until his death.

The ground of the alleged change of settlement of Na-
haniel Pittee from Weymouth to Hingham, was a residence
f ten years, and the payment of taxes for five years within
hat time, in the last-named town, under the twelfth mode
of settlement established by the act of 1793, *c.* 34, § 2, passed
on the 11th of February, 1794, by which it was provided, that
any person, being a citizen of the state, and of the age of
twenty-one years, who should thereafter reside in any town
or district within the commonwealth, for the space of ten
years together, and pay all state, county, town or district
taxes, duly assessed on such person's poll or estate, for any
five years within said time, should thereby gain a settlement
in such town or district.

It appeared from certain books, denominated "bills of as-
sessments," which were found among the records of the town
of Hingham, that Nathaniel Pittee was assessed in Hingham
for his poll and personal estate from the year 1790 to the
year 1798, both inclusive; but there were no receipts to be
found for these taxes, nor was there any other evidence, either
way, except in regard to the tax for 1798, as to the payment
of them by Pittee, or by any other person for him.

In regard to the taxes for 1798, amounting to $4·03, which
sum was made up of town and state taxes, $3·03, and "dog"
tax, $1, it appeared that the entry of them on the bill of
assessment had been erased by a line drawn through it.    It
also appeared, that there was in the office of the clerk of the
town of Hingham, a book called the "selectmen's book of
accounts with the treasury of the town of Hingham," in
which there was an entry as follows: "1799, April.    By an
order in favor of Moses Whiton, collector, for discount of
Nathaniel Pittee's taxes for 1798."    The selectmen of Hing-
ham, for the years 1798 and 1799, were also assessors, and
all the entries in the "selectmen's books" for these years
were in the handwriting of some one of those officers.
There was no other book to be found containing abatements
of taxes; and all the town officers of Hingham for the year
1798 were dead.    It was agreed, also, that there were no

collector's books to be found for the years in question, or any evidence of the payment of any person's taxes during those years, or any books or papers relating to Pittee's settlement, except as above mentioned.

The dog tax of $1, mentioned in the bill of assessments for the year 1798, as one of the items of Nathaniel Pittee's taxes for that year, was assessed upon all persons who were the owners or keepers of dogs, pursuant to the provisions of the act of 1797, *c.* 53,* passed February 19th, 1798, which was in force on the 1st of May, 1798, when the taxes for that year were assessed, but was repealed on the 19th of February, 1799, by the act of 1798, *c.* 54. The former act contained an express provision, that no person should " at any time acquire a privilege of habitancy, or right of voting in any town, district or plantation meeting, in consequence of paying any tax" imposed by virtue of the act.

The last-named act repealed the former, except as to the prosecutions for injuries, and the collection of taxes.

*P. W. Chandler,* city solicitor, for the plaintiffs.

*J. J. Clarke,* for the defendants.

DEWEY, J. It is agreed that the settlement of Nathaniel Pittee, the ancestor of the paupers in question, was formerly in Weymouth, and that this must fix their settlement, unless the ancestor afterwards acquired a new settlement in the town of Hingham. A previous settlement in Weymouth being admitted, the burden is on the defendants to show a change of settlement.

The settlement in Hingham is attempted to be established under the twelfth mode provided in the statute of 1793, *c.* 34,

---

* This statute, entitled " An act to lessen the dangerous evils of canine madness and other injuries occasioned by dogs," authorized the imposition of an annual tax of $1 for every dog owned or kept in Massachusetts proper, (this part of the act not extending to the district of Maine); and also contained provisions to prevent injuries from mischievous dogs, which were substantially reënacted in the repealing act of the next year. The act of 1797 was published with the laws of the political year 1797–8 ; but is not known to be contained in any collection of the general laws.

§ 2, by residing in a town ten years consecutively, and paying all state, county and town taxes assessed therein on the party for any five years during that time. The defendants attempt to show the payment of such taxes annually from the year 1794 to the year 1798 inclusive. But the question of payment arises more particularly as to the tax of 1798. The defendants exhibit an original document, purporting to be an assessment of taxes for that year upon Nathaniel Pittee of $4·03, which makes a *prima facie* case of an assessment of such a tax. The next inquiry is, has the tax thus assessed been paid ? Does the production of the assessment of the tax of 1798, and a similar assessment for several previous years, furnish competent evidence of the payment of such tax ? It is argued, on behalf of the defendants, that this must be so held; otherwise such payments never could be established, where the transactions were ancient. If this were so, it would by no means follow, that we should sanction the sufficiency of such evidence, to sustain the burden of showing a tax not only duly assessed but also duly paid. But we think, that where the original tax bill can be produced and shown to have been in the hands of a collector, some further additional facts are usually apparent upon the face of the bill, in the nature of memoranda or signs, in dicating the payment of such as are actually paid. We are not prepared to say, that the mere production of an assessment roll, or tax bill, although purporting to have been made more than fifty years since, unaccompanied with any proof beyond the mere assessment, raises any presumption of the payment of the tax of any particular individual whose name is borne on that roll. It is true, that the great majority of persons pay the taxes assessed upon them; but there are at all times, and upon every assessment roll, the names of persons who do not pay the taxes assessed to them, by reason of poverty, or for some other cause. This would be quite too loose and unsatisfactory a species of evidence to rely upon to establish the fact of actual payment, which is required here.

But the present case does not demand of us any expression

of opinion upon this isolated fact of a tax upon Nathaniel Pittee, inasmuch as the plaintiffs have introduced evidence tending to show that the tax of 1798 was not in fact paid. This leads us to the question raised by the defendants as to the competency of the particular species of evidence offered by the plaintiffs upon that point.

1. As to the book purporting to be the selectmen's book, was this competent evidence ? Upon inspecting this book, it purports to be "the selectmen's book of accounts with the treasury of the town of Hingham." The selectmen were the agents of the town in keeping their accounts with their treasurer. The proposed evidence is an entry upon this book crediting the town treasurer, "by an order in favor of Moses Whiton, collector, for discount of Nathaniel Pittee's taxes for 1798, $3·03." This evidence was, in our opinion, competent. It would be so, as containing an entry on the books of the town, adverse to the interest of the town, as this credit to their treasurer would be. This being also an ancient transaction, and the book being duly shown to have come from the custody of the town by their agents, the selectmen, who also acted in the capacity of assessors in the year this entry was made, the entry is evidence proper to be considered in the case. This evidence tends to show, that the selectmen, acting as assessors, had abated in part the tax assessed upon Nathaniel Pittee for the year 1798, and that the same was not paid by him, or by any one on his behalf. The assessment roll contains on its face marks and erasures confirmatory of and tending to establish the fact, that this tax was not paid. Of the whole amount of $4·03, it thus appears that $3·03 was abated. This leaves $1, which is supposed to be the amount of a dog tax, assessed upon such of the inhabitants as were owners of dogs, under the provisions of the statute of 1797, *c.* 53, but which was repealed by the statute of 1798, *c.* 54. The statute authorizing the tax on dogs was in force on the 1st of May, 1798, when this tax was assessed. But such dog tax, if assessed upon Nathaniel Pittee, in May, 1798, and subsequently paid by him, could not have any effect in establishing his settlement in Hingham

By the sixth section of the act of 1797, *c.* 53, it is in direct terms provided, that such assessment of a dog tax, and the payment thereof, by the person thus assessed, shall not affect the settlement of such person, as a pauper. The abatement of all but the dog tax in 1798, and the omission to tax Pittee after 1798, tend to show, that the tax of 1798 was not paid, and satisfactorily rebut any presumption which might be supposed to arise from the mere proof of an assessment of a tax, if such assessment would authorize any such presumption of payment of a tax. The real question however is as to the result of all the evidence upon this point of the payment of the tax of 1798, remembering that the defendants have the burden of proof. Looking at all the evidence, and drawing all proper inferences therefrom, in our opinion, the evidence is insufficient to establish the payment of the tax of 1798, by Nathaniel Pittee. Such being the case, the defendants fail to show a settlement of the pauper in Hingham. The result is, therefore, that judgment must be entered for the plaintiffs.